# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

MARK CROWDER,

      Plaintiff,

      v.

JOHN WETZEL, Secretary of
Corrections, et al.,

      Defendants.

CIVIL ACTION NO. 3:19-cv-01815

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

This is a fee-paid federal civil rights action, brought by an incarcerated plaintiff, Mark Crowder, appearing through counsel. The plaintiff seeks to hold several state correctional officials liable under 42 U.S.C. § 1983 for the violation of his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment substantive due process rights.

The defendants have moved for summary judgment. That motion is fully briefed and ripe for decision.

## I.  BACKGROUND

Mark Crowder is a medically vulnerable convicted state prisoner. In September 2017, he was incarcerated at SCI Waymart, a state

correctional institution located in Wayne County, Pennsylvania, where he was housed in a dormitory-style unit.

On the night of September 22, 2017, while he slept, Crowder was attacked by another inmate. His assailant struck him multiple times with a padlock connected to a length of electrical cord. A correctional officer was present but failed to intervene before Crowder was struck. He suffered serious injuries as a result.

Crowder seeks to hold the correctional officer who was present, and his shift supervisor, liable for failure to intervene to protect him from the assault. He seeks to hold various other prison officials for the decision to transfer the assailant to SCI Waymart, to which Crowder claims the assailant was unsuited based on his custody level or security profile.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such

that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a prima facie showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a

genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

### III.   MATERIAL FACTS[1]

The plaintiff, Mark Crowder, was incarcerated at SCI Waymart, a

---

[1] In compliance with Local Rule 56.1, the defendants' motion for summary judgment is "accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." (Doc. 61.) M.D. Pa. L.R. 56.1. Moreover, each factual statement presented by the defendants in support of their motion for summary judgment "include[s] references to the parts of the record that support the statements." *Id.*; *see also* Fed. R. Civ. P. 56(c)(1).

A party opposing summary judgment is likewise required by the local rules to file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs" in the movant's statement of material facts, which must similarly "include references to the parts of the record that support the statements." M.D. Pa. L.R. 56.1.

Here, the non-moving plaintiff has filed the requisite responsive statement of material facts, responding to the numbered paragraphs of the moving defendant's statement of material facts. (Doc. 72.) But in addition to his responses to the defendants' 19 separately numbered factual statements, the plaintiff has submitted a twentieth paragraph with factual statements concerning defendant Wetzel that does not respond to the defendants' statements of material facts. (Doc. 72, at 11–12.) The local rules do not permit a non-moving party to file *additional* factual statements that do not respond to the movant's statement. *See Farmer v. Decker*, 353 F. Supp. 3d 342, 347 n.1 (M.D. Pa. 2018) (disregarding non-movant's additional statement of facts for non-compliance with Local Rule 56.1); *Barber v. Subway*, 131 F. Supp. 3d 321, 322 n.1 (M.D. Pa. 2015) (declining to consider separate counter-statement of facts that was non-responsive to the movant's statement because it was "neither contemplated nor permitted by the Local Rules"); *see also Rau v. Allstate Fire & Cas. Ins. Co.*, 793 Fed. App'x 84, 87 (3d Cir. 2019) (upholding district court decision to strike non-movant's non-responsive counter-statement of facts under Local Rule 56.1); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 64, 613–14 (3d Cir. 2018) (upholding district
*(continued on next page)*

state correctional institution, in September 2017.[2] SCI Waymart houses

a variety of classes of inmates.[3]

On September 22, 2017, in the middle of the night, Crowder was

attacked while he slept by another inmate (the "assailant") using a

padlock attached to a cord; the assailant walked directly to Crowder from

---

court decision to strike non-responsive paragraphs from non-movant's answer to movant's statement of material facts under Local Rule 56.1). Thus, we have simply disregarded the plaintiff's non-responsive paragraph 20.

[2] The moving defendants have cited to the plaintiff's deposition testimony in support of this factual statement. The non-moving plaintiff has responded "denied as stated," followed by a counter-statement of related but nonresponsive and immaterial facts—concerning the plaintiff's medical condition at the time and the physical layout of the dormitory-style unit where he was housed—that do not controvert the moving defendants' factual statement. Generally, factual statements to which a non-moving plaintiff has responded "denied as stated," factual statements for which the non-moving plaintiff has provided a qualified denial without actually controverting the moving defendants' corresponding factual assertion, and factual statements for which the non-moving plaintiff's response is not properly supported by citations to competent evidence in the record are properly deemed undisputed. *See Chase v. Frontier Commc'ns Corp.*, 361 F. Supp. 3d 423, 431 n.1 (M.D. Pa. 2019); *see also Mercurio v. Louisville Ladder, Inc.*, No. 3:16-CV-412, 2018 WL 2465181, at *1 n.1 (M.D. Pa. May 31, 2018) (deeming movant's factual statements admitted where non-moving party responded "denied as stated" with explanations that did not go to the truth of the matter, but rather offered legal analysis of the movant's assertions or directed the court to unrelated facts). Thus, the moving defendants' factual statement, which is supported by citation to competent evidence, is deemed admitted.

[3] *See supra* note 2.

his own cubicle 25 feet away in the same dormitory-style housing unit.[4]

Crowder did not believe he was in any danger from his assailant, and

thus did not inform any staff that he was in imminent danger prior to

this incident.[5]

The plaintiff's assailant had been transferred to SCI Waymart for

his own safety.[6]

_____

[4] The moving defendants characterized the attack as happening "suddenly and without warning." The non-moving plaintiff responded, "admitted in part, denied in part," followed by additional responsive factual statements concerning the circumstances of the incident and concerning a brief verbal altercation between Crowder and his assailant a couple of weeks earlier, which Crowder testified at deposition that he reported to a non-party corrections supervisor. The plaintiff's counter-statement of facts was supported by citations to record evidence.

[5] *See supra* note 2.

[6] The non-moving plaintiff has responded "admitted in part, denied in part," followed by a lengthy counter-statement of fact with citations to the record. The plaintiff contends that the assailant may have been transferred to SCI Waymart "because he was a known confidential informant." This, of course, is not at all inconsistent with the moving defendants' statement that the assailant was transferred for safety reasons. Moreover, the only evidence cited by the plaintiff in support of this counter-statement of fact are transfer petitions that provide no support for his factual counter-statement at all. *See Blackwell-Murray v. PNC Bank*, 963 F. Supp. 2d 448, 464 (E.D. Pa. 2013) (rejecting evidentiary citations that did not support the factual assertions they accompanied). Upon review of the record, however, we note that a transfer petition dated April 3, 2018, indicates that, *at that later date*, the assailant had been *labeled* as an informant and was in fear for his safety following an attack on him by another inmate on March 28, 2018.

*(continued on next page)*

It is permissible to house custody level 4 (or lower) inmates in dormitory style housing.[7]

Defendant O'Hara is employed at SCI Waymart as a corrections officer.[8]

It is not unusual for inmates in dormitory style housing to get up in

---

(Ex. I (Transfer Petition System / Permanent Petition, at DEF000750), Doc. 78 (SEALED), at 23.) We find nothing, before or after that date, to indicate that the assailant was in fact an informant. The remainder of the plaintiff's factual counter-statement is nonresponsive and argumentative; thus, we have disregarded it.

[7] The non-moving plaintiff has responded "denied as stated," followed by a counter-statement of nonresponsive facts that do not controvert the moving defendants' factual statement. *See supra* note 2. In particular, we note that the plaintiff cites a transfer petition noting that the assailant had been deemed "unsuitable for open dorm setting," but that petition was prepared in January 2018, four months *after* the incident involving this plaintiff. (Ex. I (Transfer Petition System / Permanent Petition, at DEF000751), Doc. 78 (SEALED), at 24.) *See Blackwell-Murray*, 963 F. Supp. 2d at 464. Moreover, we note that documentation submitted by the plaintiff indicates that the assailant was *not* a custody level 4 at the time of the incident, but rather he was a custody level 2 at the time, the same as the plaintiff. (*See* Ex. D (Extraordinary Occurrence Report, at DEF000021, DEF000025 (Sept. 22, 2017)), Doc. 61-5, at 2, 6; *see also* Ex. I (Inmate Query / Classification History, at DEF000730), Doc. 78 (SEALED), at 3; Ex. I (Inmate Query / Re-Classification Information, at DEF000733 (June 28, 2017)), Doc. 78 (SEALED), at 6.)

[8] The non-moving plaintiff has admitted this factual statement, but his response includes an additional, nonresponsive factual counter-statement, which we have disregarded.

the night.[9]

At deposition, O'Hara testified that the cube where Crowder's bed was located was a few feet away, right in front of the desk where he sat, and that inmates routinely approach the desk in the middle of the night to talk with the guard on duty there, request medical treatment, et cetera. (O'Hara Dep. 21, Doc. 61-8.) O'Hara testified that, upon seeing the assailant approaching Crowder's bed in the middle of the night, he asked what the assailant was doing and, upon receiving no response, he immediately stood up and attempted, unsuccessfully, to stop him from entering the cube. (*Id.* at 23.) O'Hara testified that the assault happened quickly, with the assailant striking Crowder several times with a padlock attached to a television cord and the attack ceasing before O'Hara could reach the assailant. (*Id.* at 24–25.) O'Hara testified that he stepped in front of the assailant and used his body to push him out of the cube. (*Id.* at 25.)

---

[9] The non-moving plaintiff has responded "admitted in part, denied in part," followed by a lengthy counter-statement of fact with citations to the record. The additional material, however, is nonresponsive, argumentative, and immaterial. The plaintiff's response does not identify any part of the defendants' factual statement that is actually denied; thus it is deemed admitted in full.

At his own deposition, Crowder provided conflicting testimony. Crowder testified that he recalled feeling a very sharp pain while sleeping. (Crowder Dep. 21, Doc. 61-2, at 22.) He jumped up and found that he was being attacked by the assailant, who was wielding a padlock woven to an extension cord. (*Id.*) The assailant had been striking him in the face, so Crowder put his arms up defensively to protect his head, taking wounds to his arms instead. (*Id.*) Crowder testified that the attack stopped when another inmate housed in the same cube, whom he knew as "Bucky," jumped in front of Crowder and shoved the assailant out of the cube. (*Id.* at 23–24.) Crowder testified that O'Hara *did not* intervene until "everything was over with." (*Id.* at 25.) Crowder testified that after he was already rushing to the bathroom with other guards who had responded to the incident, O'Hara locked the assailant in a side room. (*Id.* at 25–26.)

Defendant Hendrick is employed at SCI Waymart as a lieutenant. On September 22, 2017, Hendrick was the shift commander, but he was not present for this incident.[10]

Defendant Sommers was superintendent of SCI Waymart at the

---

[10] *See supra* note 8.

time of the incident.[11] Defendant Sommers was not present during this incident.[12] Defendant Sommers was not specifically consulted regarding the assailant's transfer to SCI Waymart.[13]

Defendant Nicklow was employed as director of the Office of Population Management for the Pennsylvania Department of Corrections.[14] Defendant Nicklow directed defendant Houser to transfer the plaintiff's assailant to SCI Waymart.[15]

Defendant Rivello was working in the Office of Special Investigations and Intelligence for the Pennsylvania Department of Corrections.[16] Defendant Rivello worked with defendant Nicklow on transferring the assailant to SCI Waymart after receiving the request from defendant Houser.[17]

The Pennsylvania Department of Corrections was not aware of any

---

[11] *See supra* note 8.

[12] *See supra* note 9.

[13] The non-moving plaintiff has responded "denied," followed by a lengthy counter-statement of fact with citations to the record. The additional material, however, is nonresponsive and argumentative; thus, we have disregarded it.

[14] *See supra* note 8.

[15] *See supra* note 8.

[16] *See supra* note 8.

[17] *See supra* note 8.

reason why the plaintiff's assailant was inappropriate to be housed at

SCI Waymart.[18]

## IV.   DISCUSSION

Crowder has brought this federal civil rights action under 42 U.S.C.

§ 1983. Section 1983 provides in pertinent part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State or
> Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States
> or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . . .

---

[18] The non-moving plaintiff has responded "denied," followed by a lengthy counter-statement of facts, some of which is entirely unsupported by citations to the record. With respect to the remainder of the plaintiff's response, the plaintiff provides record citations, but the material is nevertheless nonresponsive, argumentative, and immaterial. The plaintiff references documented "security concerns" about the assailant, but he supports this factual assertion by citing to a document that post-dates the incident by several months. *See supra* note 6. The plaintiff notes the absence of video cameras or other unspecified security measures, citing to deposition testimony by various defendants, but this factual assertion is nonresponsive, argumentative, and immaterial. The plaintiff describes his subsequent filing of a grievance and the related investigation and administrative appeals proceedings, citing to evidence entirely unrelated to the grievance and related proceedings; regardless of evidentiary support (or the lack thereof), this counter-statement of fact is also nonresponsive, argumentative, and immaterial. Thus, we have disregarded the extraneous material provided in the plaintiff's response.

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

Here, the plaintiff has asserted three separate causes of action under § 1983. In Count I, Crowder claims that defendants Sommers, Houser, Rivello, Nicklow, and Wetzel were deliberately indifferent to a substantial risk of serious harm to him, based on the transfer of his assailant to SCI Waymart, in violation of his Eighth Amendment rights. In Count II, Crowder claims that defendants O'Hara and Headrick were deliberately indifferent to a substantial risk of serious harm to him, based on their failure to intervene or to protect him from being assaulted, in violation of his Eighth Amendment rights. In Count III, Crowder asserts a "state created danger" claim against all of the defendants, alleging that they created or enhanced a danger that deprived him of his Fourteenth Amendment substantive due process rights.

## A. State-Created Danger Claim

In Count III of the second amended complaint, Crowder has asserted a "state-created danger" claim against all defendants, alleging that the defendants created or enhanced a danger that deprived Crowder of his substantive due process rights under the Fourteenth Amendment.[19] *See generally Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013); *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996).

But this substantive due process claim must be dismissed because it is barred by the "more-specific-provision rule." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998)). "Under this rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *Id.* (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)); *see also Korth v. Hoover*, __ F. Supp. 3d ___, 2016

---

[19] Under the "state-created danger" theory, "liability may attach where the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013) (emphasis added).

WL 3088147, at *8–*9 (M.D. Pa. June 2, 2016); *Hunter v. Prisbe*, 984 F. Supp. 2d 345, 350–51 (M.D. Pa. 2013).

Accordingly, the defendants' summary judgment motion will be granted with respect to Count III of the second amended complaint.

## B. Claim Based on Transfer of Assailant

In Count I of the second amended complaint, Crowder seeks to hold the remaining defendants liable for the decision to transfer his assailant to SCI Waymart. Crowder contends that his assailant had a history of violence, which included serving a sentence for a criminal assault offense and a history of institutional misconducts,[20] and was unsuited for placement at SCI Waymart, which housed a variety of medically vulnerable inmates, including the plaintiff. Crowder contends that the remaining defendants—Wetzel, Sommers, Rivello, Houser, and Nicklow—were aware of this history of violence, but they nevertheless participated in the decision to transfer the assailant to SCI Waymart

---

[20] As may be gleaned from our recitation of the material facts, the record does not contain substantial evidence that, prior to his attack on Crowder in September 2017, the assailant had a significant history of violence. The evidence identified by the plaintiff in which prison officials acknowledged security risks posted by the assailant largely post-dates this incident. *See supra* notes 7 and 18.

despite his unsuitability for that institution. The plaintiff argues that this constituted deliberate indifference to a substantial risk of serious harm to other inmates, such as the plaintiff.

But even assuming *arguendo* that the assailant may be appropriately characterized as having a history of violence, that alone is an insufficient factual premise upon which to base a deliberate indifference claim. "The risk that an inmate with some history of violence might attack another inmate for an unknown reason . . . is too speculative to give rise to an Eighth Amendment claim." *Blackstone v. Thompson*, 568 Fed. App'x 82, 84 (3d Cir. 2014) (per curiam). To support a reasonable inference that an excessive risk of serious harm was present, a plaintiff must also adduce evidence of "longstanding, pervasive, well-documented, or previously noted tensions" between the specific inmates at issue, or evidence that prison officials were told of a "specific incident or cause of tension between the [particular inmates] from which a greater inference of risk could be drawn." *Id.* at 84. "Although it is clear that [the plaintiff's assailant] had a history of misconduct, a propensity for violence does not provide prison officials with adequate notice that the inmate will attack another inmate without

- 16 -

a more 'particularized and plausible connection.'" *Warrington v. Pa. Dep't of Corrs.*, Civil Action No. 1:19-CV-00237, 2022 WL 525846, at *6 (M.D. Pa. Feb. 22, 2022) (quoting *Blackstone*, 568 Fed. App'x at 84); *see also Straker v. Valencik*, Civil No. 3:18-cv-1569, 2021 WL 1134591, at *8 (M.D. Pa. Mar. 24, 2021) ("While [the inmate] alleges that [the prison official] may have been aware of the assailant's violence, there is no indication . . . that [the prison official] was aware of any threats of physical harm or violence toward [this particular inmate] that were disregarded. As such, [the inmate's] allegations are too speculative to state a deliberate indifference claim against [the prison official].").

Accordingly, the defendants' summary judgment motion will be granted with respect to Count I of the second amended complaint.

**C. Failure to Protect Claim**

In Count II of the second amended complaint, Crowder has asserted a failure to protect claim against defendant O'Hara, the correction officer on duty and present at the time and place of the assault, and defendant Headrick, the shift supervisor on duty at the time of the assault.

The Eighth Amendment imposes "a duty upon prison officials to take reasonable measures to protect prisoners from violence at the hands

of other prisoners." *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)) (internal quotation marks omitted). To establish a failure to protect claim, an inmate must demonstrate that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm"; and (2) the prison official acted with "deliberate indifference" to his health and safety. *Farmer*, 511 U.S. at 834. To be deliberately indifferent, a prison official must both "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. This standard is subjective, not objective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 R.3d 120, 131 (3d Cir. 2001).

Here, it is undisputed that Crowder did not inform *anyone* that he was in imminent danger of being attacked by his assailant prior to the incident—indeed, it is undisputed that Crowder himself did not believe he was in any danger.[21] As to Headrick, who was serving as shift

---

[21] Although Crowder informed a non-party corrections supervisor of a verbal altercation that had occurred between himself and his assailant a couple of weeks earlier, there is no evidence in the record to suggest that either O'Hara or Headrick was aware of the prior incident. Nor is

*(continued on next page)*

supervisor at the time, and who was not present when the attack took place, there is simply no evidence at all that Headrick had the requisite subjective awareness of any risk of serious harm to Crowder at any time. *See Wood v. Russell*, 255 F. Supp. 3d 498, 510 (D. Del. 2017).

As Crowder's immediate custodian, O'Hara was of course present when the attack took place. It is undisputed that O'Hara had no *prior* knowledge of any threat to Crowder posed by the assailant. But once he became aware of the threat of an assault on one of his charges by another inmate, O'Hara had a duty to take reasonable steps to intervene to protect the victim from the attacking inmate. *See Bistrian v. Levi*, 696 F.3d 352, 371–72 (3d Cir. 2012), *abrogated on other grounds by Bistrian v. Levi*, 912 F.3d 79, 95–96 (3d Cir. 2018); *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002); *Brown v. Smith*, Case No. 1:18-cv-00193 (Erie), 2019 WL 2411749, at *3 (W.D. Pa. June 7, 2019).

Here there is conflicting evidence as to the actions taken by O'Hara during the attack. O'Hara testified that he took immediate steps to intervene, interposing himself between assailant and victim, and

---

there any evidence to suggest that the assailant articulated any specific threats of serious harm to Crowder at that—or any—time. *See Jones v. Beard*, 145 Fed. App'x 743, 745 (3d Cir. 2005) (per curiam).

pushing the assailant out of the cube. Meanwhile, Crowder testified that it was another inmate who interposed himself between assailant and victim, shoving the assailant out of the cube, and that O'Hara did not turn up until after the attack was done, and after other correctional officers had already responded. Under these circumstances, viewing the evidence in the light most favorable to the non-moving plaintiff, we find that a reasonable jury could conclude that O'Hara had "a realistic and reasonable opportunity to intervene" to protect Crowder but refused to do so. *See Bistrian*, 696 F.3d at 371–72; *Smith*, 293 F.3d at 650–51.

Accordingly, with respect to the failure to protect claim set forth in Count II of the second amended complaint, the defendants' summary judgment motion will be granted with respect to defendant Headrick, but denied with respect to defendant O'Hara.

### D. Qualified Immunity Defense

Our inquiry with respect to the plaintiff's failure to protect claim against O'Hara does not end there. In addition to seeking summary judgment on the merits of the plaintiffs' § 1983 claim, the defendants have interposed the affirmative defense of qualified immunity.

The doctrine of qualified immunity protects government officials

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325–26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged

inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first).

As discussed above, there exists a genuine dispute of material fact on the merits of the plaintiff's failure to protect claim against O'Hara. Moreover, it is well settled that a prisoner such as Crowder has "a clearly established constitutional right to have prison officials protect him from inmate violence." *See Bistrian*, 696 F.3d at 367; *see also Williams v. Ortiz*, Civil Action No. 16-2903, 2019 WL 1384273, at *4 (E.D. Pa. Mar. 27, 2019).

Accordingly, the defendants' motion for summary judgment will be denied with respect to its assertion of a qualified immunity defense on behalf of defendant O'Hara.

## V.   CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment will be granted in part and denied in part. The clerk will be directed to enter judgment in favor of defendants Wetzel, Sommers,

Rivello, Houser, Nicklow, and Headrick and against the plaintiff on all claims. The failure to protect claim against defendant O'Hara, set forth in Count II of the second amended complaint, will be set down for trial.

An appropriate order follows.

Dated: September 30, 2022          **_s/Joseph F. Saporito, Jr._**
                                   JOSEPH F. SAPORITO, JR.
                                   United States Magistrate Judge